UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **LONNIE STONEBRAKER** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-cv-02094-HEA |
| | ) | |
| **LVNV FUNDING, LLC, et al.** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S TRIAL BRIEF

*INTRODUCTION*

**1. Summary of the Evidence Plaintiff Expects to Show**

Plaintiff Lonnie Stonebraker is a retired veteran of the United States Army. In approximately 2001, he obtained a credit card with Bank of America. He used the card sparingly for items like groceries and he asked that Bank of America close the card several years later. Lonnie contends the card was closed with no balance owed. Lonnie never heard anything from Bank of America about the debt thereafter; Bank of America sent no deficiency notices, no collection letters, and never called Lonnie to let him know there was an overdue balance.

In 2007, a company called "Sherman Originator" purchased a Bank of America credit card debt allegedly belonging to Lonnie. Sherman Originator transferred the debt to LVNV, who then assigned Resurgent the responsibility of collecting on the debt. Neither LVNV nor Resurgent had any account statements, a copy of the contract, or even an affidavit from Bank of America that authenticated the alleged debt.

Nonetheless, Defendants sued Plaintiff in state court in 2011 in an effort to collect more than $3,000 associated with the Bank of America credit card. Lonnie hired attorney Kris Boevingloh to defend the case. Attorney Boevingloh immediately challenged LVNV's standing via affirmative defense. Attorney Boevingloh sent requests for production of documents to

LVNV and demanded that LVNV produce evidence that the debt was valid and that LVNV had standing to collect the same. Weeks later, LVNV dismissed its suit against Lonnie without prejudice. LVNV never re-filed the suit, and LVNV never provided any documentation of the debt to Lonnie or attorney Boevingloh.

Even though LVNV dismissed the state court lawsuit rather than produce any evidence of the debt, LVNV credit reported the debt as an undisputed collection item against Lonnie for years thereafter. LVNV finally conceded to code the trade line as "disputed" in January of 2013. LVNV and Resurgent would not stop reporting the debt, and they would not stop trying to collect it from Lonnie. For example, in the summer of 2013, Defendants placed the debt with Northland Group for further collection. They inexplicably increased the balance of the debt to more than $5,000. They continued to credit report the debt.

The collection activity hurt Lonnie. Other than the supposedly unpaid "collection account" that LVNV listed, Lonnie had perfect credit. Lonnie could not qualify for a mortgage loan and could not exercise his veteran's benefits under the VA loan program. Lonnie could not qualify for a business loan that he wanted to start a small retail business. In the wake of this lawsuit, Defendants finally deleted the debt from Lonnie's credit report.

2. **What Plaintiff Expects to Achieve**

Lonnie will ask the jury to return a verdict in his favor with respect to each of his FDCPA claims under 15 U.S.C. § 1692d, e, and f. Lonnie will ask the jury for $2,000 in statutory damages ($1,000 for each Defendant) pursuant to 15 U.S.C. § 1692k. Lonnie will ask the Court to award reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k. Lonnie will ask the jury for an actual damages award that balances the scales for the harm he suffered in the form of monetary loss, stress, and frustration.

*SUMMARY AND ANALYSIS OF APPLICABLE LAW*

1. **The "Unsophisticated Consumer" Standard and Strict Liability**

The FDCPA is a strict liability statute, and a consumer need not show intentional conduct by the debt collector to establish a violation. Mayhall v. Berman & Rabin, P.A., 2014 WL 340215, at *4 (E.D.Mo. Jan 30, 2014).

The jury must use the "unsophisticated consumer" to measure Lonnie's claims against Defendants. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692. The actions of a debt collector are evaluated under the "unsophisticated consumer" standard, an objective test designed to protect consumers of "below average sophistication or intelligence." Strand v. Diversified Collection Service, Inc., 380 F.3d 316, 317-18 (8th Cir. 2004). Under the "unsophisticated consumer" standard, judgment can be entered when collection activity "on its face violates the FDCPA… even in the absence of extrinsic evidence." Bode v. Encore Receivables Mgmt., Inc., 2007 WL 2493898, at *4 (E.D. Wis. Aug. 30, 2007).

2. **Plaintiff's Burden of Proof; Plaintiff is a "Consumer"**

Lonnie must establish the following to prevail on his claims: (1) he is a consumer, (2) Defendants are debt collectors, (3) there was an attempt to collect a debt, and (4) Defendants violated, by act or omission, a provision of the FDCPA. *See* Creighton v. Emporia Credit Serv., Inc., 981 F. Supp. 411, 414 (E.D. Va. 1997); Isaacson v. Saba Commercial Servs. Corp., 636 F. Supp. 2d 722, 724 (N.D. Ill. 2009).

Lonnie will testify that while he does not recognize the amount that Defendants are trying to collect as valid, he only had one Bank of America credit card and he only used that card for

consumer purposes like grocery purchases. Lonnie did not use the card for any business purpose.

3. **LVNV is a Debt Collector**

Defendant LVNV will contend that it is not a debt collector and will try to evade liability by explaining that it is a passive "debt buyer." This precise argument has been rejected again and again in the district and Circuit courts. *See, e.g.*, Murr v. Tarpon Finan. Corp., No. 3:10–CV–372, 2014 WL 546690, at *4 (E.D. Tenn. Feb. 10, 2014); Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003); F.T.C. v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007); Munoz v. Pipestone Finan., LLC, 397 F. Supp. 2d 1129, 1133 (D. Minn. 2005); Flint v. EMC Mortg. Corp., No. 05-4137-CV-C-SOW, 2005 WL 2237693, at *2 (W.D. Mo. Sept. 14, 2005).

The Circuit courts have uniformly held that the statutory definition of "debt collector" includes debt buyers like Defendant LVNV. Those courts have determined that the operative inquiry under Section 1692a(6) is "the status of the debt at the time it was acquired." Check Investors, 502 F.3d at 173. If the debt in question was in default at the time it was acquired by an entity, that entity is considered a debt collector. Schlosser, 323 F.3d at 536; Bridge, 681 F.3d 355, 359. The analysis is no more complicated than that.

4. **Defendants Resurgent and LVNV violated 15 U.S.C. § 1692e(2) when they continually attempted to collect constantly changing amounts on the very same alleged debt.**

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It then provides a

4

non-exhaustive list of conduct that violates the broad prohibition on misleading tactics. Id. Subsection 1692e(2)(A) proscribes "[t]he false representation of the character, amount, or legal status of any debt." Id. § 1692e(2)(A). This requirement applies to all collection activity, including reporting a consumer debt to the credit reporting bureaus. *See* 15 U.S.C. § 1692e; Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1035-36 (D. Minn. 2010) (holding that reporting a debt to a credit reporting agency constitutes collection activity within the meaning of the FDCPA). May v. NCEP, LLC, 4:13CV1583 CDP, 2014 WL 2009081, n. 8 (E.D. Mo. May 16, 2014).

Defendants' collection attempts in this case included filing a lawsuit, sending multiple collection letters, and reporting Plaintiff's debt as an undisputed account to the credit bureaus. Notably, the amount Defendants attempted to collect within many of these collection communications was constantly changing – often at unexplainable discrepancies. Indeed, while Defendants were concurrently credit reporting Plaintiff's account, the collection letters they sent to him contained a wholly different amount alleged to be due during the very same timeframe. Defendants thus necessarily stated a false amount within one or more of its collection communications in violation of Section 1692e(2)(A).

5. **Defendants Resurgent and LVNV violated 15 U.S.C. § 1692f by attempting to collect an amount not expressly authorized by agreement or by law.**

Section 1692f(1) prohibits a debt collector from collecting any amount from a consumer "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f. Accordingly, a debt collector violates the FDCPA when it attempts to collect a debt without possessing any evidence that the amount it is attempting to collect is actually. *See, e.g.*, Prince v. LVNV Funding, LLC, No. 2:13-CV-462-WKW, 2014 WL

5

3361912, at *8 (M.D. Ala. July 9, 2014) (denying LVNV's motion to dismiss plaintiff's claims brought under Section 1692f that "LVNV lacks evidence of [plaintiff's] agreement creating the debt, and thereby supporting the amount she allegedly owes.").[1]

Moreover, while a debt collector who is simply collecting the debt may reasonably rely on its *client's* representations regarding the debt, in this case, LVNV was the actual party who was assigned the debt. Accordingly, it possessed an independent duty to ensure the amount it attempted to collect was expressly authorized by the agreement creating the debt as opposed to blindly relying on representations made by the original creditor or other assignees multiple steps removed from the agreement. *See* Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1275 (11th Cir. 2011) ("A debt collector does not fulfill this affirmative obligation by delegating it entirely to [third parties] whose actions are not even regulated by the FDCPA."). Defendants have been unable to produce *any* document that expressly authorizes the collection of Plaintiff's alleged debt, much less at the exact amount Defendants demanded.

6. **Defendant LVNV violated 15 U.S.C. § 1692e when it falsely informed Plaintiff that he could request verification that he owed the debt when Defendant never possessed the documentation to fulfill that obligation.**

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "One type of misrepresentation prohibited by § 1692e(2)(A) is the false representation that a debt exists." Yarney v. Ocwen Loan Servicing, LLC, 929 F. Supp. 2d 569, 576 (W.D. Va. 2013).

---

[1] In Prince, after LVNV's Motion to Dismiss was denied, LVNV reached a confidential settlement with the plaintiff, part of which involved the parties agreeing to ask the court to vacate the damaging opinion. Prince v. LVNV Funding, LLC, No. 2:13-CV-462-WKW, 2014 WL 7506753 (M.D. Ala. July 21, 2014).

Here, LVNV, by and through its agent Northland, sent Plaintiff an initial collection letter on July 13, 2013. Therein, LVNV represented to Plaintiff that he could request in writing documentation that proved the debt existed and that Plaintiff owed the exact amount LVNV alleged to be due. By informing Plaintiff that he could obtain verification of the debt upon a written request, Defendant created the representation that it possessed valid documentation demonstrating that the debt exists and that the amount it was attempting to collect was authorized. In order to confirm that the debt existed and that LVNV was requesting the correct amount, it necessarily required LVNV to possess, at minimum: (1) documents from each chain of the assignment showing that LVNV held a valid assignment to collect the debt; (2) the original contract or agreement giving rise to the alleged debt; and (3) the bills that demonstrate the amount of the debt Defendant was attempting to collect was accurate. In reality, LVNV admitted that it never possessed any of that documentation or even whether the documentation existed at the time LVNV continued to attempt to acquire payment on the debt. By nonetheless representing to Plaintiff that he could request information that LVNV did not possess, LVNV made a false representation to a consumer in violation of Section 1692e.

7. **<u>Defendants Resurgent and LVNV violated 15 U.S.C. § 1692e(8) when they credit reported Plaintiff's debt as undisputed when they knew that information to be false.</u>**

Section 1692e(8) provides that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "communicating or threatening to communicate to any person **credit** information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). "If a debt collector knows that a debt is disputed by the consumer ... *and reports it to a credit bureau,* he must report it as disputed."

Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008) (quoting FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988)).

In 2011, LVNV filed a lawsuit against Plaintiff in Franklin County Circuit Court, Case No. 11AB-AC01170 for the alleged non-payment of a credit card. Immediately thereafter, attorneys Kristoffer Boevingloh & George Pliakos entered their appearances on behalf of Plaintiff and began defending him against Defendant's claims. Plaintiff, by and through his attorneys Boevingloh & Pliakos, filed his Answer denying all materials allegations and served Defendant with discovery requests demanding strict proof of the allegations within Defendant's Petition. Accordingly, as of 2011, Defendant possessed actual knowledge that Plaintiff was disputing the debt. Notwithstanding such knowledge, Defendants actively and falsely credit reported Plaintiff's debt to the credit reporting bureaus as undisputed into January of 2013. Defendants' actions were unquestionably a violation of Plaintiff's FDPCA rights under Section 1692e(8).

8. **Defendants Resurgent and LVNV violated 15 U.S.C. § 1692g because they failed to either (1) cease collecting Plaintiff's debt or (2) obtain verification that he owed the debt after receiving a written dispute.**

When a debt collector receives notification in writing that the consumer disputes the amount or existence of a debt, the collection must "cease collection of the debt, or any disputed portion thereof" or obtain "verification of the debt" and mail such verification to the consumer. 15 U.S.C. § 1692g. Therefore, if the consumer disputed the debt in writing, the debt collector has two options: (1) stop collecting the debt or (2) send verification that the debt exists and that the amount it is attempting to collect is proper. *See* Sambor v. Omnia Credit Servs., Inc., 183 F. Supp. 2d 1234, 1242 (D. Haw. 2002) ("Read together, §§ 1692g(a) and 1692g(b) provide that a

debt collector must 'cease' collecting a debt until the debt collector has verified the debt and sent that verification to the debtor."). In this case, Defendants did neither.

After receiving written notice of Plaintiff's dispute during the course of the 2011 collection lawsuit, Defendant voluntarily dismissed its action instead of providing Plaintiff proof that he owed the debt. As of the date of this filing, Defendants have never provided Plaintiff any verification that he in fact owes the debt that they attempted to collect. Undeterred, and in violation of Section 1692g, Defendants unlawfully preceded with their collection efforts in the face of Plaintiff's dispute without ever mailing him a copy of the documentation that verifies the existence and amount of the debt

### 9. LVNV is Liable As Resurgent's Principal

Defendant LVNV has admitted via its designee that it attempted to collect Plaintiff's debt through its agent, Resurgent. Defendant LVNV is vicariously liable for Resurgent's collection attempts because Defendant LVNV is itself a debt collector. Suquilanda v. Cohen & Slamowitz, LLP, 10 Civ. 5868, 2011 WL 4344044, at *4 (S.D.N.Y. Sept. 8, 2011) ("Courts have concluded that where the principal is a 'debt collector,' the principal may be liable for its agent's FDCPA violations."); Allgood v. West Asset Mgmt., Inc., No. 2:12–CV–02094–APG–NJK, 2013 WL 6234691, at *4 (D. Nev. Dec. 2, 2013); Oei v. N. Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006); Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 405 (3d Cir. 2000) (holding that an entity that is itself a "debt collector" and hence subject to the FDCPA should "bear the burden of monitoring the activities of those it enlists to collect debts on its behalf"). These principles comport with traditional notions of vicarious liability, which find a principal liable for the actions of its agent merely when the agent acts within the scope of his authority. Okyere v. Palisades Collection, Inc., 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013).

## 10. Statutory Damages: Plaintiff is entitled to two awards- one against LVNV, and one against Gamache.

At least one court has held that the FDCPA limits the total recovery of additional damages to $1,000, and Defendants will undoubtedly be pushing the Court to accept this view. *See Dowling v. Kucker Kraus & Bruh, LLP,* No. 99-cv-11958, 2005 WL 1337442, at *3 n. 3 (S.D.N.Y. Jun. 6, 2005). By its terms, however, the statute does not impose such a limitation. The statute provides, in part, that "any debt collector ... is liable "for additional damages not to exceed $1,000." *197 15 U.S.C. § 1692k(a). In other words, the limitation that the statute imposes is cast not in terms of the plaintiff's recovery, but in terms of each Defendant's liability.

Thus, in the case of multiple defendants, each may be liable for additional damages of up to $1,000. *See Ganske v. Checkrite, Ltd.,* No. 96-cv-0541, 1997 WL 33810208, at *5 (W.D.Wis. Jan. 6, 1997). In a two-defendant case such as this one, Defendants are not jointly and severally liable for the full $2,000 in statutory damages that the court imposes; rather, each is individually liable for $1,000 in statutory damages. Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196-97 (N.D.N.Y. 2008). Jones v. Inv. Retrievers, LLC, No. 3:10-CV-1714, 2011 WL 1565851, at *7 (M.D. Pa. Apr. 25, 2011)

Because § 1692k(a) imposes liability for statutory damages upon "any debt collector who fails to comply with [the act]," statutory damages can be imposed against more than one defendant debt collector in a single proceeding if it is established by the plaintiff that each debt collector independently violated the FDCPA. Ganske v. Checkrite, Ltd., No. 96-C-0541-S, 1997 WL 33810208, at *5 (W.D. Wis. Jan. 6, 1997). Allowing an award of additional damages up to $1,000 per defendant furthers the purpose of the FDCPA to create an incentive for debt collectors to obey the law, but limiting that award to defendants acting independently from each

other also avoids an unwarranted double recovery. Wilson v. NACM-Oregon Serv. Co., No. 3:12-CV-01515-ST, 2013 WL 6780627, at *12 (D. Or. Dec. 19, 2013).

11. **Analysis of Defendant's Bona Fide Error Defense**

Defendants have the burden of asserting and proving their own affirmative defenses, including the bona fide error defense. Wilhelm v. Credico, Inc., 519 F.3d 416, 420 (8th Cir. 2008). Defendants maintain this burden throughout the litigation, including at trial. No reasonable jury should conclude that either Defendants' bona fide error defense is viable because Defendants cannot claim to have credit reported and otherwise collected an unsubstantiated debt against Plaintiff unintentionally, nor can Defendants maintain that they adapted procedures reasonable to prevent this supposed error. Defendants cannot satisfy any of the elements required for the bona fide error defense, as set forth below.

The totality of LVNV's bona fide error defense is set forth in the deposition of Tonya Henderson. On page 81-82 of her deposition, she testified "I don't know of the policies and procedures Resurgent has in place to prevent unfair credit reporting." Henderson then stated, "The policies and procedures we have to review that information, review the information that Bank of America gave us, review the dispute that the consumer is attesting to, and investigate all of that information." Unfortunately, the record is clear that after Lonnie disputed the debt in the 2011 lawsuit (via his Affirmative Defenses), LVNV did absolutely nothing to investigate the debt. LVNV continued to credit report the debt through at least July of 2013 and possibly through the filing of the instant lawsuit (although it finally listed the debt as "disputed" in January of 2013). LVNV continued to collect the debt from Lonnie, as evidenced by the 2013 collection attempts via Northland Group.

11

As this Court recently stated the rule in a case analogous to the instant one, "[t]o qualify for the bona fide error defense, a debt collector must show: (1) the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." Ploch v. Client Services, Inc., No. 4:12CV0518-HEA *7 (E.D. Mo. Apr. 4, 2013).

The Ploch case is instructive here. Ploch, decided by this Court on April 1, 2013, involved a collector who contacted the consumer after the collector knew the consumer was represented by counsel. The collector, after being sued by the consumer and thereby learning that the consumer had retained counsel on the debt, initiated a post-suit collection campaign directed at the consumer for the same debt that was the subject of the lawsuit. The collection activity included frequent calls to Plaintiff.

The collector, just like the current Defendants, attempted to hide behind a conclusory allegation of bona fide error. The collector stated simply that it did not intend to contact the consumer again and that it had procedures adapted to avoid the error. The collector used the affidavit of its Chief Information Officer, Edward Little, to explain its procedures. The collector's explanation in that case was almost a match for Defendant's in this one – if the collector receives notice that a consumer is represented, it will note the consumer's account so that all communications will cease.

In response to the bona fide error defense, the consumer noted that although the collector made a self-serving, conclusory statement that its conduct was unintentional, the collector admitted that it had notice of the consumer's representation and nevertheless called and sent letters. Further, the collector had presented no evidence that the error was genuine ("bona fide") – the collector's statement that it did not intend to make the error had no bearing on whether the

error was genuine.  Finally, the consumer argued that the collector had failed to explain what its "procedures" were, in what manner those procedures were "reasonably adapted" to avoid the error, and any facts at all to explain how the error occurred in that specific case.

This Court was not fooled by the collector's conclusory assertion of the bona fide error defense.  He rejected the collector's bona fide error argument and granted summary judgment for the consumer.  Opinion, Memorandum and Order at 8, Ploch v. Client Services, Inc.  This Court honed in on what the collector in that case, and the Defendant in our case, failed to do:

> [The collector] failed to offer any specific facts detailing how or why the multiple correspondences were unintentional. Instead, Defendant merely offers self-serving, conclusory statements that the correspondences were unintentional without explaining any facts that caused the multiple calls and letter.

Id. at 7–8.  This Court found that this failure prevented the collector from establishing even the first element of the bona fide error defense.  Id. at 8.

Defendant has failed to create a jury issue for any of the three elements of the bona fide error defense.  This is true not only because of Defendant LVNV's conduct, but also by its own testimony.

**i.     Defendants have not presented evidence sufficient to find that their lawsuit against Plaintiff was unintentional.**

Defendants cannot deny they continued to collect and credit report the debt against Plaintiff even after Defendants recognized they lacked a shred of competent evidence that a debt was owed at all.  This was no accident.  Therefore, Defendants fail to establish a necessary element of the bona fide error defense.

**ii.    Defendants have not presented any evidence that its error was bona fide.**

13

Exactly like the Ploch collector, Defendants offer absolutely no evidence that their "mistake" in collecting on a baseless debt was genuine. Defendants simply did nothing to evaluate Plaintiff's dispute. Defendants never bothered to get an affidavit from Bank of America. Defendants never bothered to get the contract between Lonnie and Bank of America. Defendants never bother to get a breakdown from Bank of America of the charges that gave rise to the alleged balance. Defendants remained willfully blind so that they could continue to attempt to collect the debt against Mr. Stonebraker.

### iii. Defendants have not explained how their procedures were reasonably adapted to avoid errors like this one and have offered no facts concerning the error in this instance.

Defendants have failed to show how any of their procedures were adapted to prevent the suit filed against Plaintiff. The Bacelli court clarified this element's requirements:

> [T]he required procedures must be reasonably adapted to avoid the specific error at issue. Johnson, 443 F.3d at 729. Moreover, "the procedures ... must be explained, along with the manner in which they were adapted to avoid the error." Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1007 (9th Cir.2008). ***A conclusory declaration that the debt collector maintained procedures to avoid error is insufficient***. Id.

Bacelli v. MFP, Inc., 729 F.Supp.2d 1328, 1333 (M.D. Fla. 2010) (emphasis added). Courts have granted summary judgment against collectors on their claim of bona fide error even with extensive evidence of error-prevention procedures, when the collector fails to show that the procedures were reasonably adapted to avoid the specific error at issue. See Reichert v. National Credit Systems, Inc., 531 F.3d 1002, 1006–07 (9th Cir. 2008); Dragon v I.C. System, Inc., 483 F.Supp.2d 198 , 205–06 (D. Conn. 2007); Goins v. JBC & Associates, P.C., 352 F.Supp.2d 262,

273–74 (D. Conn. 2005); Isham v. Gurstel, Staloch & Chargo, P.A., 738 F.Supp.2d 986, 999–1000 (D. Ariz. 2010).

Respectfully submitted,

VOYTAS & COMPANY, LLC

/s/ Richard A. Voytas, Jr.

_____
RICHARD A. VOYTAS, JR., #52046MO
1 North Taylor Ave.
St. Louis, Missouri 63108
Phone: (314) 932-1068
rickvoytas@gmail.com

**Certificate of Service**

The undersigned attests that, on February 27, 2015, the foregoing document was served by e-mail on the following counsel of record:

HINSHAW AND CULBERTSON, LLP

Christopher M. Garcia
701 Market Street
Suite 1300
St. Louis, MO 63101
cgarcia@hinshawlaw.com
jhongs@hinshawlaw.com

/s/  Richard A. Voytas, Jr.